## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| v. | * | **CRIMINAL NO. 22-00236-JB-1** |
| | * | |
| **GRAYSON ZACHARY EAGAN,** | * | |
|   aka G, | * | |
|   aka GRAY | * | |

## FACTUAL RESUME

The United States, by and through Sean P. Costello, the United States Attorney for the Southern District of Alabama, files this factual resume in anticipation of the change-of-plea hearing for defendant **GRAYSON ZACHARY EAGAN, aka G, aka GRAY** ("**EAGAN**"), which is currently scheduled for August 11, 2023, at 10:00 am. Doc. 149 (text-only order). **EAGAN** has filed a notice of his intent to plead guilty to all counts of the Superseding Indictment, Doc. 78, without a plea agreement, Doc. 148.

## ELEMENTS OF THE OFFENSES & MAXIMUM PENALTIES

### COUNT ONE

To prove a violation of a violation of Title 21, United States Code, Section 846 (Conspiracy to Possess with Intent to Distribute Methamphetamine (Actual)), as charged in Count One of the Superseding Indictment, the United States must prove:

1. Two or more people in some way agreed to try to accomplish a shared and unlawful plan, the object of which was to possess with the intent to distribute methamphetamine (actual);

2. The defendant knew the unlawful purpose of the plan and willfully joined in it; and

3. The object of the unlawful plan was to possess with intent to distribute more than 50 grams of methamphetamine (actual).

Pattern Crim. Jury Instr. 11th Cir. OI O100 (Mar. 2022).

The maximum penalties the Court could impose as to Count One of the Superseding Indictment are as follows:

a) Life imprisonment, with a mandatory minimum term of ten (10) years' imprisonment;

b) A fine not to exceed $10,000,000;

c) A term of supervised release of life, with a mandatory minimum supervised release term of five (5) years, which would follow any term of imprisonment (if the defendant violates the conditions of supervised release, he could be imprisoned for the entire term of supervised release);

d) A mandatory special assessment of $100.00; and

e) Such restitution as may be ordered by the Court.

## COUNT TWO

To prove a violation of a violation of Title 21, United States Code, Section 846 (Conspiracy to Possess with Intent to Distribute Heroin), as charged in Count Two of the Superseding Indictment, the United States must prove:

1. Two or more people in some way agreed to try to accomplish a shared and unlawful plan, the object of which was to possess with the intent to distribute heroin; and

2. The defendant knew the unlawful purpose of the plan and willfully joined in it.

Pattern Crim. Jury Instr. 11th Cir. OI O100 (Mar. 2022).

The maximum penalties the Court could impose as to Count Two of the Superseding Indictment are as follows:

    a)    Twenty (20) years' imprisonment;

    b)    A fine not to exceed $1,000,000;

    c)    A term of supervised release of life, with a mandatory minimum supervised release term of three (3) years, which would follow any term of imprisonment (if the defendant violates the conditions of supervised release, he could be imprisoned for the entire term of supervised release);

    d)    A mandatory special assessment of $100.00; and

    e)    Such restitution as may be ordered by the Court.

**COUNT THREE**

To prove a violation of a violation of Title 21, United States Code, Section 841(a)(1) (Possession with Intent to Distribute Methamphetamine (Actual)), as charged in Count Three of the Superseding Indictment, the United States must prove:

    1.    The defendant knowingly possessed methamphetamine (actual);

    2.    The defendant intended to distribute the methamphetamine (actual); and

    3.    The defendant possessed more than 50 grams of methamphetamine (actual).

Pattern Crim. Jury Instr. 11th Cir. OI O98 (Mar. 2022).

The maximum penalties the Court could impose as to Count Three of the Superseding Indictment are as follows:

    a)    Life imprisonment, with a mandatory minimum term of ten (10) years' imprisonment;

    b)    A fine not to exceed $10,000,000;

 c) A term of supervised release of life, with a mandatory minimum supervised release term of five (5) years, which would follow any term of imprisonment (if the defendant violates the conditions of supervised release, he could be imprisoned for the entire term of supervised release);

 d) A mandatory special assessment of $100.00; and

 e) Such restitution as may be ordered by the Court.

**COUNT FOUR**

To prove a violation of a violation of Title 21, United States Code, Section 841(a)(1) (Possession with Intent to Distribute Heroin), as charged in Count Four of the Superseding Indictment, the United States must prove:

 1. The defendant knowingly possessed heroin; and

 2. The defendant intended to distribute the heroin.

Pattern Crim. Jury Instr. 11th Cir. OI O98 (Mar. 2022).

The maximum penalties the Court could impose as to Count Four of the Superseding Indictment are as follows:

 a) Twenty (20) years' imprisonment;

 b) A fine not to exceed $1,000,000;

 c) A term of supervised release of life, with a mandatory minimum supervised release term of three (3) years, which would follow any term of imprisonment (if the defendant violates the conditions of supervised release, he could be imprisoned for the entire term of supervised release);

 d) A mandatory special assessment of $100.00; and

 e) Such restitution as may be ordered by the Court.

**COUNT FIVE**

To prove a violation of a violation of Title 18, United States Code, Section 924(c)(1)(B)(ii) (Possession of a Firearm in Furtherance of a Drug Trafficking Crime), as charged in Count Five of the Superseding Indictment, the United States must prove:

1. The defendant committed the drug-trafficking crime charged in Counts One, Two, Three, and/or Four of the Superseding Indictment;

2. The defendant knowingly possessed a firearm in furtherance of that crime, as charged in the Superseding Indictment; and

3. One of the firearms the defendant knowingly possessed—that is, a Glock, model 19Gen4, 9mm pistol, serial number PYX303, equipped with a machinegun-conversion device, commonly referred to as a "Glock switch," was a machinegun.

Pattern Crim. Jury Instr. 11th Cir. OI O35.3, O35.5, & O35.10 (Mar. 2022).

The maximum penalties the Court could impose as to Count Five of the Superseding Indictment are as follows:

a) Life imprisonment, with a mandatory minimum consecutive term of thirty (30) years' imprisonment;

b) A fine not to exceed $250,000;

c) A term of supervised release of five (5) years, which would follow any term of imprisonment (if the defendant violates the conditions of supervised release, he could be imprisoned for the entire term of supervised release);

d) A mandatory special assessment of $100.00; and

e) Such restitution as may be ordered by the Court.

**COUNT SIX**

To prove a violation of a violation of Title 18, United States Code, Section 922(g)(1) (Possession of a Firearm by a Prohibited Person (Felon)), as charged in Count Six of the Superseding Indictment, the United States must prove:

1. The defendant knowingly possessed a firearm in or affecting interstate or foreign commerce;

2. Before possessing the firearm, the defendant had been convicted of a felony—a crime punishable by imprisonment for more than one year; and

3. At the time the defendant possessed the firearm, the defendant knew he had previously been convicted of a felony.

Pattern Crim. Jury Instr. 11th Cir. OI O34.6 (Mar. 2022).

The maximum penalties the Court could impose as to Count Six of the Superseding Indictment are as follows:

a) Ten (10) years' imprisonment;

b) A fine not to exceed $250,000;

c) A term of supervised release of three (3) years, which would follow any term of imprisonment (if the defendant violates the conditions of supervised release, he could be imprisoned for the entire term of supervised release);

d) A mandatory special assessment of $100.00; and

e) Such restitution as may be ordered by the Court.

## OFFENSE CONDUCT

The United States provides the following statement of facts solely to assist the Court in determining whether a factual basis exists for **EAGAN's** plea of guilty. The statement of facts does not contain each fact known to the United States concerning **EAGAN's** involvement in the charges set forth in the Superseding Indictment. All dates, times, locations, and amounts described below are approximations.

Between August 2020 and March 2021, in the Southern District of Alabama and elsewhere, **EAGAN** conspired with his codefendants, Dylan Michael Miller ("Miller") and Lakin Amanda Wright ("Wright"), and others, known and unknown, to possess with intent to distribute methamphetamine (actual), a schedule II controlled substance, and heroin, a schedule I controlled substance, in violation of 21 U.S.C. §§ 846 and 841(a)(1). **EAGAN** knew the unlawful purpose of the plans and willfully joined in them. The object of one of the unlawful plans was to possess with intent to distribute more than 50 grams of methamphetamine (actual). **EAGAN** is therefore subject to the penalty provisions of 21 U.S.C. § 841(b)(1)(A) with respect to Counts One and Three of the Superseding Indictment.

Additionally, on March 8, 2021, in the Southern District of Alabama and elsewhere, **EAGAN** knowingly possessed the firearms referenced in Count Five of the Superseding Indictment, in furtherance of a drug-trafficking crime for which he may be prosecuted in a court of the United States, namely, the drug-trafficking crimes alleged in Counts One, Two, Three, and Four of the Superseding Indictment, to which he is pleading guilty. **EAGAN** knew that one of the firearms he possessed in furtherance of his drug-trafficking crimes was a machinegun. He is therefore subject to the penalty provisions of 18 U.S.C. § 924(c)(1)(B)(ii). **EAGAN** also knew he was a convicted felon at the time he knowingly possessed the firearms.

At 1:43 am on March 8, 2021, a Baldwin County, Alabama Sheriff's Office ("BCSO") deputy was sitting stationary in his marked BCSO patrol unit on U.S. Highway 90, east of County Road 87, in Elsanor, Alabama, which is within the Southern District of Alabama. The deputy observed a black BMW 335i sedan (the "BMW") pass by him westbound on Highway 90. **EAGAN** was driving the BMW, with Miller in the front passenger seat and Wright in the backseat. The BMW's taillights emitted a bright white light, in violation of Alabama law.[1] The deputy pulled onto the roadway and tried to catch up to the BMW on Highway 90, briefly losing sight of it. As the deputy approached the intersection of Highway 90 and County Road 87, he saw the bright white lights of the BMW traveling at a high rate of speed southbound on County Road 87. The BMW suddenly slowed and turned left toward Dyess Lane, never actually making the turn and driving on the wrong side of the road for a short distance before returning to the proper travel lane. At that point, the deputy activated his emergency lights and sirens to attempt to stop the BMW. **EAGAN** accelerated away, leading BCSO deputies on a 30-mile high-speed chase.

The pursuit carried on at speeds in excess of 100 miles per hour through various lighted intersections and stop signs. BCSO deputies deployed a spike strip near U.S. Highway 91 and County Road 91, which successfully deflated the BMW's front left tire. **EAGAN** did not stop, however, avoiding a second spike strip near U.S. Highway 98 and County Road 93. As the pursuit continued, the BMW lost its front left tire, leaving only the rim of the wheel on the vehicle. The BMW pressed on at speeds between 80 and 100 mph on U.S. Highway 98, crossing into Florida.

The pursuit continued into a residential area, approaching a "T" intersection at Halsey Drive and Reed Road in Pensacola, where the BMW spun out and lost control. The deputy noticed

---

[1] Ala. Code § 32-5-242(g)(2) ("Rear clearance lamps and those marker lamps and reflectors mounted on the rear or on the sides near the rear of a vehicle shall display or reflect a red color.").

that the rear-passenger window of the BMW was down and believed that evidence was being discarded from the car. As reflected on in-car dash-camera video, a black bookbag was thrown from the open window of the BMW and rolled into a driveway located on Reed Road.

The pursuit continued down Reed Road until **EAGAN** made a left onto Rue Max Street, spinning out and getting stuck in a driveway at the intersection of Rue Max Street and Donald Drive. Deputies then took **EAGAN**, Miller, and Wright into custody. Lying next to **EAGAN**, deputies found an AR-15-style rifle with an arm brace, which was loaded with a round in the chamber. **EAGAN** had $3,058 in cash on his person.

Deputies saw multiple firearms and a set of digital scales covered in a crystal-like residue lying in plain view in the BMW. Deputies then conducted a probable-cause search of the BMW and recovered, among other things, seven firearms (three handguns, including a .40-caliber Glock pistol that had previously been reported stolen, three AR-15-style firearms, and a 12-gauge shotgun), numerous rounds of ammunition and magazines (including a high-capacity drum magazine), and a tactical body armor vest. Deputies found the stolen Glock between the driver's seat where **EAGAN** had been sitting and the center console of the BMW; the other two handguns were in the backseat area (a revolver lying loose and another Glock pistol equipped with a machinegun-conversion device in a case). The shotgun was on the rear seat, and the other two AR-15-style firearms were in the trunk. At the time of the incident on March 8, 2021, and as detailed further below, **EAGAN** had previously been convicted of felony offenses in the Circuit Court in and for Escambia County, Florida, and therefore federal law prohibited him from possessing firearms or ammunition.

The firearms recovered from the BMW (and their locations) are listed below:

1. a Sig Sauer, model SIGM400, 5.56mm pistol, serial number 20L057974 (trunk);

2. a Smith & Wesson, model M&P-15, 5.56mm rifle, serial number TR39728 (trunk);

3. an Anderson Manufacturing, model AM-15, multi caliber pistol, serial number 20071493 (on the ground next to **EAGAN**);

4. a Glock, model 22, .40-caliber pistol, serial number PDK530 (between the driver's seat and center console – reported stolen in November 2020);

5. a Smith & Wesson, model 37 Airweight, .38 Special caliber revolver, serial number J242360 (rear floorboard);

6. a Glock, model 19Gen4, 9mm pistol, serial number PYX303, equipped with a machinegun-conversion device, commonly referred to as a "Glock switch" (on the backseat in a case with a drum magazine); and

7. a Yildiz Silah Sanayi, model YP12SC, 12-gauge shotgun, serial number P20283 (rear seat).

A nexus expert with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") examined the above-referenced firearms found in the BMW and determined that they (1) are "firearms" as defined in 18 U.S.C. § 921(a)(3); and (2) were manufactured outside of Alabama, and therefore traveled in and affected interstate and/or foreign commerce.

Additionally, an ATF firearms-classification expert examined and observed a test firing of the Glock, model 19Gen4, 9mm pistol, serial number PYX303, equipped with a machinegun-conversion device, commonly referred to as a "Glock switch." The Glock switch was installed as a replacement of the pistol's slide cover plate. That device is intended to convert a semiautomatic Glock-type pistol into a machinegun (similar to U.S. Patent 5,705,763) by utilizing an extended metal "leg" to push the trigger bar down and out of engagement with the firing pin as the slide closes, releasing the partially retracted firing pin to travel forward and fire a cartridge. When the

trigger is depressed, the Glock switch device enables a Glock-type pistol to shoot automatically more than one shot, without manual reloading, by a single function of the trigger, thereby rendering it a machinegun under federal law.

With the Glock switch attached, the Glock, model 19Gen4, 9mm pistol, serial number PYX303 is a "machinegun" under federal law because it is a weapon that shoots, is designed to shoot, or can be readily restored to shoot automatically more than one shot, without manual reloading, by a single function of the trigger. 18 U.S.C. § 921(a)(24) & 26 U.S.C. § 5845(b). Moreover, the Glock switch, itself being a combination of parts designed and intended for use in converting a weapon into a machinegun, in and of itself, is also a machinegun. *Id.* ATF's test firing confirmed the functionality of the weapon, which automatically expelled multiple rounds by a single function of the trigger, as repeated several times.

BCSO deputies also recovered drugs and other relevant items from the BMW. On the passenger's seat where Miller had been sitting, deputies found a personal use amount of marijuana, 15 unopened packages of suboxone, and two containers of THC gummies. On the rear seat, where Wright had been sitting, deputies located a brown bag containing female items and a wallet. Inside the wallet, deputies found a bag containing a clear crystal substance that field tested positive for methamphetamine. Inside the trunk of the BMW near where deputies recovered two of the AR-15-style firearms, deputies found a vacuum-sealed bag that had been cut in half and contained methamphetamine residue. Deputies also found a small amount of marijuana in Wright's pocket. Deputies seized several cell phones from the BMW and obtained warrants to search their contents. Deputies also found $1,003 in cash inside the BMW.

While **EAGAN** was seated in a patrol unit, he made spontaneous statements not in response to any questioning as he observed deputies searching the BMW. Those statements were captured

on dash and cabin-camera videos. For example, **EAGAN** stated, "Did that bitch not throw my motherfucking drugs out?" Minutes later, **EAGAN** stated, "Did you get my bookbag?"

At 8:00 am on March 8, 2021, hours after deputies' pursuit and arrest of **EAGAN** and his codefendants, a resident of Reed Road called the Escambia County, Florida Sheriff's Office ("ECSO") to report having found the black bookbag in his driveway. The resident stated that when he looked in his front lawn that morning, he saw the black bookbag (a designer "Coach" bag), which did not belong to him. The resident looked in the bag and saw a gun, so he contacted ECSO.

Inside the bookbag, deputies found, among other things, the following items:

1. a Kel-Tec, model PMR 30, .22-caliber pistol, serial number WW6V99;

2. a Heckler & Koch, model P30, 9mm pistol, serial number 129-077779;

3. an SCCY, model CPX-1, 9mm pistol, serial number C032038;

4. a Rossi, model M69, .32-caliber revolver, serial number C247112;

5. several items of drug paraphernalia (including baggies, spoons, a hypodermic needle, a scale-calibration weight, and Narcan);

6. 1,040 grams of 100% pure methamphetamine (actual) (as confirmed by an expert forensic chemist with the Drug Enforcement Administration ("DEA"));

7. 38.8 grams of heroin (as confirmed by an expert forensic chemist with the DEA); and

8. $74,065 in banded-up cash.

An ATF nexus expert examined the above-referenced firearms found in the bookbag and determined that they (1) are "firearms" as defined in 18 U.S.C. § 921(a)(3); and (2) were manufactured outside of Alabama, and therefore traveled in and affected interstate and/or foreign commerce.

Additionally, a forensic scientist with the Alabama Department of Forensic Sciences examined DNA swabs taken from several items found in the bookbag and compared them to a buccal swab taken from the right cheek of **EAGAN's** mouth. The DNA expert located **EAGAN's** DNA on a swab from a spoon that was in the bookbag near the drugs, guns, and cash. The combination of genetic traits detected in that swab, which matched **EAGAN's** DNA profile, occur in 1 of 1.78 octillion (1 of 1.78E+27) random, unrelated Caucasian individuals. In other words, the DNA expert would have testified, with a high degree of confidence, that **EAGAN** was the source of the DNA detected in the swab.

Forensic cell phone examiners extracted the contents of cell phones taken from the BMW that were linked to **EAGAN's** email and Cash App accounts. **EAGAN** used those phones during the period of the conspiracies alleged in the Superseding Indictment. The phones contained numerous Facebook and text messages that **EAGAN** exchanged with his codefendants and with other coconspirators regarding his drug-trafficking activities and his possession of firearms in furtherance of drug-trafficking crimes. In those messages, **EAGAN** identified himself by name, discussed drug sales and prices, and used various drug slang terms, including but not limited to "clear" and "cream" (methamphetamine), "boy" and "boi" (heroin), "fent" (fentanyl), "beans" (ecstasy), "zips" (ounces), and "bricks" (kilograms). For one representative example, **EAGAN** exchanged text messages with an individual using a phone number with a (251) area code. In those messages, **EAGAN** discussed trading drugs to the individual in exchange for a .380-caliber firearm. The phones that **EAGAN** used also contained drug ledgers listing his prior drug sales, amounts he made from those sales, and amounts he was still owed.

**EAGAN** also exchanged text messages demonstrating that he knew the characteristics that made the Glock, model 19Gen4, 9mm pistol, serial number PYX303 a machinegun under federal

law, and his possession of such machineguns in furtherance of drug trafficking. For one representative example, **EAGAN** exchanged text messages about Glock switches with an individual using a phone number with an (850) area code. That individual asked, "how much value does it add to a Glock to order and install the switch?" **EAGAN** responded, "You can't get the switch without [an] FFL"—*i.e.*, a federal firearms license. The individual responded, "But if I can get the switch.. how much." **EAGAN** replied, "Maybe 500," adding, "I'm sayin though I'll buy that bitch." In the same string of messages, **EAGAN** offered to clear the individual's drug debt in exchange for getting **EAGAN** a Glock switch.

At the time that **EAGAN** knowingly possessed the 11 firearms seized from the BMW and the bookbag, he knew he had previously been convicted of felony crimes, namely, (i) Possession of a Controlled Substance on May 28, 2014, in the Circuit Court in and for Escambia County, Florida, case number 2012CF000019A; and (ii) Possession of a Controlled Substance on May 28, 2014, in the Circuit Court in and for Escambia County, Florida, case number 2012CF004650A.

    Respectfully submitted,

    SEAN P. COSTELLO
    UNITED STATES ATTORNEY

    By:

    */s/ Justin D. Roller*
    Justin D. Roller
    S. Gaillard Ladd
    Assistant United States Attorneys
    United States Attorney's Office
    63 South Royal Street, Suite 600
    Mobile, Alabama  36602
    (251) 441-5845
    justin.roller@usdoj.gov
    gaillard.ladd@usdoj.gov

## **CERTIFICATE OF SERVICE**

      I hereby certify that on August 9, 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to counsel of record for the defendants.

                                                         */s/ Justin D. Roller*
                                                         Justin D. Roller
                                                         S. Gaillard Ladd
                                                         Assistant United States Attorneys